**STERN ELECTRONICS, INC., Plaintiff,**

v.

**Harold KAUFMAN d/b/a Bay Coin, Omni Video Games, Inc., Ferncrest Distributors, Inc., Frank Gaglione and Kevin McIntyre, Defendants.**

No. 80 C 3248.

United States District Court,
E. D. New York.

May 22, 1981.

Blum, Kaplan, Friedman, Silberman & Beran, New York City (Steven B. Pokotilow, New York City, of counsel), Pigott, Gerstman & Ellis, Ltd., Chicago, Ill. (George Gerstman, Chicago, Ill., of counsel), for plaintiff.

Schulte, Roth & Zabel, New York City (Robert M. Abrahams, Aegis J. Frumento, New York City, of counsel), Adler, Pollock & Sheehan, Inc., Providence, R.I. (Richard W. MacAdams, Providence, R.I., of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

On November 25, 1980 plaintiff Stern Electronics, Inc. (Stern) filed a complaint alleging that defendants infringed plaintiff's copyrights in its electronic video games "Kamikaze" and "Astro Invaders" by selling a virtually identical video game, "Zygon." On January 19, 1981, following a hearing on Stern's motion for a preliminary injunction, defendants consented to the entry of an order preliminarily enjoining them from infringing plaintiff's copyrights in "Kamikaze" and "Astro Invaders," and instructing them to deliver to the court for impoundment all "Zygon" games under their control.

On April 23, 1981 Stern filed an order to show cause seeking leave to file a supplemental complaint asserting new claims for copyright infringement and false designation of origin against defendants regarding the electronic video game "Scramble." Stern also sought a preliminary injunction to stop defendants from infringing plain-

tiff's copyright in "Scramble" and from using its "Scramble" trademark.

On May 6, 1981 defendant Omni Video Games, Inc. ("Omni") filed a complaint in the United States District Court for the District of Rhode Island alleging that Stern Electronics, Inc. ("Stern") was infringing Omni's common law trademark rights in the mark "Scramble." On May 8, 1981 Omni moved for preliminary injunctive relief in that case. That motion is apparently still pending.

On May 18, 1981, just prior to the hearing in this court on Stern's motion, defendants filed a cross-motion requesting relief identical to that requested in the District Court for Rhode Island. Stern then filed an order to show cause seeking to restrain Omni from prosecuting its motion for a preliminary injunction in Rhode Island pending final determination of the motion before this court.

### I.

Late in 1980 a Japanese corporation, Konami Industry Co., Ltd. ("Konami") devised a new electronic video game named "Scramble." The work was first published in Japan on January 8, 1981 and first came to Stern's attention early that same month at the Amusement Trade Exhibit in London, England. On January 27, 1981 Konami granted an exclusive license to distribute "Scramble" in North and South America to Universe Affiliated International, Inc. ("Universe"), a New Jersey corporation, which simultaneously granted an exclusive sub-license to Stern. Stern began selling "Scramble" in the United States on March 17, 1981.

A Certificate of Copyright Registration for the audiovisual work "Scramble" was issued to Konami on April 14, 1981 by the United States Copyright Office. Documents reciting the exclusive license to Universe and the exclusive sub-license to Stern were recorded with the Copyright Office on April 16, 1981.

Around December 1, 1980 defendant Frank Gaglione, President of Omni, ordered ten silk screen name plates bearing the name "Scramble" from BCA Poster Co. Omni received the name plates on December 15, 1980 and on December 23 began to sell its "Space Guerilla," "Space Carrier," and "Rally-X" video games with headboards bearing the "Scramble" name plates. The invoices indicate that five games were sold before March 17, 1981 bearing the "Scramble" name plate.

Sometime in April 1981, defendant Omni began to sell a video game called "Scramble 2," which, according to Stern, is substantially similar in its audiovisual presentation to Stern's "Scramble." Stern claims that Omni's sale of this game after April 16, 1981 infringes Stern's copyright.

### II.

The pattern of conduct alleged in plaintiff's supplemental complaint concerning the electronic video game "Scramble" is similar to that alleged in the original complaint concerning "Kamikaze" and "Astro Invaders." Plaintiff is granted leave to file the supplemental complaint.

### III.

For this court to issue a preliminary injunction "there must be a showing of possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardship tipping decidedly toward the party requesting the preliminary relief." *Caulfield v. Board of Education of City of New York*, 583 F.2d 605, 610 (2d Cir. 1978) (emphasis in original). "In copyright cases, however, if probable success—a prima facie case of copyright infringement— can be shown, the allegations of irreparable injury need not be very detailed, because such injury can normally be presumed when a copyright is infringed." *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978).

## A. *Irreparable Injury*

█ Stern has more than met its burden of showing irreparable injury. "Scramble" is one of the most popular video games ever sold; sales since March 1981 total about twenty million dollars. Counterfeit models (or "knock-ups" as they are known in the industry) can invade this market by selling video games identical to "Scramble" for approximately $650 less per game. Knock-ups pose a substantial threat to the health of the electronic video game industry. Development of a new game requires substantial investment and takes between eight months to a year. However, little expense, time, or initiative is required to reproduce a game's programmed memory. Preliminary injunctive relief is the only effective means of protecting a copyright in a video game since the life span of a successful game is merely six months. If knock-ups dilute a copyright's profitability during that period, a final adjudication in favor of the copyright owner will do him little good. The court finds a strong likelihood of irreparable injury if interlocutory relief is denied.

## B. *Probable Success on the Merits*

If there is a likelihood of irreparable injury, a preliminary injunction is warranted if Stern can show probable success on the merits in its claim of copyright infringement. To prove copyright infringement, Stern must show that it owned a copyright in the audiovisual display in the "Scramble" video game and that Omni copied that display.

## 1. *Ownership of the Copyright*

Stern owns a copyright in the "Scramble" audiovisual display if the statutory formalities were complied with in registering for a copyright, the display is an original work of authorship, and the subject matters are "fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. §§ 102, 411, 412.

There is no dispute that plaintiff has satisfied the statutory formalities in applying for the copyright. Nor is there any serious dispute that the subject matter is fixed in a computer program stored in a memory device which, by the aid of circuitry, a cathode ray tube, and speakers, can continually reproduce the audiovisual display.

Defendants, however, argue that the "Scramble" audiovisual display is not an original work of authorship. The burden of proving that the audiovisual work is not original falls on the defendants because the Certificate of Registration constitutes prima facie evidence of the validity of the copyright *and of the facts stated in the certificate.* 17 U.S.C. § 410(c).

Defendants point out that Stern has registered the audiovisual material contained in a videotape and has not registered the underlying computer program which dictates and controls the images and sounds contained in the audiovisual display. Defendants argue that the audiovisual material is not original since it is totally dependent upon the memory device and the underlying computer program. The only original work of authorship, they claim, lies in the computer program, and this has not been registered.

However, copyright protection exists for original "motion pictures and other audiovisual works." 17 U.S.C. § 102(a)(6). "'Audiovisual works' are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied." 17 U.S.C. § 101. Stern's video game, "Scramble," falls within this definition, and presents on a screen a series of images projected by a cathode ray tube which depicts a spaceship simultaneously trying to navigate a mountainous airspace, destroy enemy fuel depots, evade deadly ground fire, and prevail in an aerial dogfight, while at the same time watching

carefully over a diminishing fuel supply. In essence, the work is a movie in which the viewer participates in the action as the fearless pilot controlling the spaceship.

The popularity of a video game depends on the creativity of its audiovisual display, not on the form of its computer program. Indeed, a potential customer does not care about the computer program except insofar as it affects the audiovisual display.

While the audiovisual display emanates from the computer program, it is senseless to say that therefore the display is not original. An author's work does not become any less original after he has found a means to replicate it.

■ An audiovisual display is an appropriate subject for a copyright even if the underlying computer program is not copyrighted. The program and the display are quite separate in form and function. The identical audiovisual display may be created from many different computer programs, and a slightly modified computer program may produce a wholly different audiovisual display.

In sum, this court finds that Stern will probably succeed on the merits in showing that it owned a copyright in the audiovisual display of its "Scramble" video game.

### 2. Copying of a Copyrighted Work

Since it is often difficult to prove by direct evidence that defendant copied a plaintiff's copyrighted work, courts have permitted a finding of copying from evidence that the defendant had access to the copyrighted work and that defendant's work is substantially similar to plaintiff's. *See Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718 (9th Cir. 1976). Here, Stern has shown access and substantial similarity, and defendants have made no claim of independent creation.

It is undisputed that defendants had access to plaintiff's "Scramble" video game. Gaglione testified that he purchased a "Scramble" video game from a distributor for Omni's corporate purposes.

At the hearing, this court viewed a videotape of plaintiff's "Scramble" and defendants' "Scramble 2." The sequence of images and sounds that appears on the screen when the game has started—the "play mode"—is virtually identical in the two games. The sequence of images that appears on the screen when the game is not being played—the "attract mode"—is slightly different. The Omni game's attract mode uses different wording than Stern's and begins in a different phase. These differences in the attract mode certainly indicate that the games are not identical, but the two games are substantially similar.

■ The heart of the audiovisual work is the play mode. That is the actual game. The customer pays a quarter to participate in the simulated space battle. The attract mode is merely advertising, designed to attract the bystander to the game and entice him to play it. Even if the attract mode were totally different in the two games, the copying of the play mode would still constitute a copyright infringement. "[I]t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.) (L. Hand, J.), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936).

This court finds that Stern will probably succeed in showing that defendants copied its audiovisual work in the video game "Scramble," and, consequently, that Stern is entitled to preliminary injunctive relief for copyright infringement.

### III.

Stern and defendants have also moved and cross-moved under 15 U.S.C. § 1125(a) for a preliminary injunction ordering each other to stop infringing their purported trademark in the name "Scramble." Neither plaintiff nor defendants has a registered trademark in the name "Scramble." Each claims that it possesses an exclusive common law trademark in the name.

In deciding whether there has been trademark infringement the court must first determine whether "Scramble" is a distinctive mark worthy of trademark protection. The word "scramble" has many meanings. In everyday language, it means "to climb or move quickly using one's hands and feet," or "to compete or struggle with others for possession or gain," or "to move in hasty urgency." *The Random House Dictionary of the English Language* 1282 (1967). In military terminology, the word refers to an order to pilots to take off quickly to intercept approaching enemy planes. *Id.*

The word "scramble" is not a valid trademark if it is merely descriptive of the characteristics of the video game and has not acquired secondary meaning. But if the word is suggestive of the nature of the game, it is entitled to trademark protection even without acquiring secondary meaning. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10–11 (2d Cir. 1976). The distinction between a mark that is descriptive and one that is suggestive is not always crystal clear. However, Judge Weinfeld has developed a useful standard which the Second Circuit has adopted:

> A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

*Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968) *quoted in West & Co., Inc. v. Arica Institute, Inc.*, 557 F.2d 338, 342 (2d Cir. 1977).

Under this standard the mark "Scramble" is more suggestive than descriptive. A prospective customer learning that a video game was called "Scramble" would have no "immediate idea" of the characteristics of the game. At most the word would give a hint that the game may involve aircraft intercepting attack planes and engaging in an air battle. Only by applying imagination could the customer visualize the actual nature of the game.

"Scramble" is therefore a valid mark, and question is who has the right to its exclusive use. Generally, the first person to use a mark "obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially." *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974).

Clearly Omni preceded Stern in using the name "Scramble"; Omni can document its use as of December 23, 1980 while Stern's first use was on March 17, 1981. Before April 1981, however, Omni used the name only on headboards, and the video games stationed beneath those headboards were not called "Scramble." They were older games already present in the Omni inventory called "Space Guerilla," "Space Carrier," and "Rally-X." The video game called "Scramble 2" was not produced by Omni until after Stern had introduced its original version of "Scramble."

Stern contends that Omni's prior use of the mark "Scramble" was not in good faith and that defendants learned of the development of "Scramble" by Konami and decided to appropriate the mark before the game's introduction into the United States. Stern argues that defendants' limited and calculated efforts to appropriate the trademark are shown by the facts that only the headboards were labeled "Scramble" and that only five of these were shipped before March 17, 1981.

"Determining what constitutes sufficient use for trademark ownership purposes is obviously a case-by-case task.... [I]t is important to note expressly that the balance of the equities plays an important role in deciding whether defendant's use is sufficient to warrant trademark protection...." *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d at 1274 n. 11. *See also Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 534 (2d Cir. 1964) ("the concept of priority in the law of trademarks is applied not in its calendar sense but on the basis of the equities involved").

This court does not find credible the testimony that defendants decided to use the name "Scramble" before they knew that others had plans to market the new game under the same name. Defendants introduced the name "Scramble" by printing it on headboards attached to video games bearing different names. This practice is likely to confuse customers who can fairly expect that the name on the headboard will match the name of the game. Indeed, Stephen Kaufman, Corporate Vice President of Marketing for Stern, testified that, in his seventeen years of experience in the industry, he had never heard of one name being used to label different amusement games. The most likely explanation for this extraordinary marketing decision is that defendants contrived this usage of the mark solely for trademark maintenance purposes in anticipation of plaintiff's introduction of the "Scramble" video game into the market. Such a contrivance cannot constitute the bona fide usage necessary to sustain a common law trademark. *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d at 1273. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 50, 63 L.Ed. 141 (1918) ("the right to a particular mark grows out of its use, not its mere adoption").

The plausibility of this explanation is bolstered by evidence that Omni only ordered ten "Scramble" name plates on December 1, 1980 and only shipped five video games bearing a "Scramble" headboard before March 17, 1981. Such a sample is too small to provide any meaningful test of the marketability of the "Scramble" trademark.

Moreover, it would be a truly remarkable coincidence if defendants independently thought of the name "Scramble" and then, only a few months later, produced a video game virtually identical to one bearing the same name. It is more likely that defendants sought to appropriate the trademark with the expectation that they would later imitate the audiovisual display.

In sum, while the court recognizes that defendants first used the mark "Scramble," it finds that defendants' use of the mark was not bona fide.

Both sides have moved for preliminary injunctive relief to protect their alleged interests in the mark "Scramble." Thus, the alternatives open to the court are to deny interlocutory relief and permit both sides to use the mark "Scramble," or to bar one side from further use of the mark.

The first alternative is undesirable. Continued use of the mark by both sides is likely to confuse or deceive operators and consumers, causing injury to the litigants and the purchasing public. One side or the other should be entitled to use the mark. The question is which. The question is certainly serious enough to constitute a fair ground for litigation. Interlocutory relief should therefore be afforded to the side to whom the balance of hardships tips decidedly. That side is Stern's.

Stern has invested a substantial amount of money in developing and marketing its electronic video game "Scramble." Ten thousand units have been sold since the game was introduced to the public in March 1981.

If this court were to enjoin Stern from continuing to use the mark, Stern would have to change the name of the game, market it under a new title, and attempt at considerable cost to re-establish the name recognition it built in the industry within the past two months.

Defendants, on the other hand, will be preliminarily enjoined by this order from infringing Stern's copyright by selling their "Scramble 2" video game. Preliminarily enjoining them from using the mark "Scramble" will not require them to change the name of any video game. Rather, it will merely prevent them from using that mark to identify other games. Such a limitation is unlikely to impose a significant hardship on the defendants.

It is therefore ordered that defendants and their agents, representatives, employees, servants, and assigns are enjoined during the pendency of this action from infringing in any manner plaintiff's copyright

in the audiovisual work entitled "Scramble." They are also enjoined during the pendency of this action from further use of the mark "Scramble." Defendants are ordered to deliver up to this court, for impounding during the pendency of this action, all of defendants' "Scramble 2" video games or any other copies of plaintiff's "Scramble" audiovisual work that infringe plaintiff's copyright and are under defendants' control.

The foregoing constitutes the court's findings of fact and conclusions of law.

Issuance of this memorandum and order renders moot plaintiff's motion to enjoin defendants from prosecuting Omni's motion for a preliminary injunction in the United States District Court for the District of Rhode Island. So ordered.