## ATARI, INC.
### v.
### AMUSEMENT WORLD, INC., et al.
### Civ. No. Y–81–803.

United States District Court,
D. Maryland.

Nov. 27, 1981.

John J. Sweeney, Jr., Baltimore, Md., and Elliot B. Aronson, San Francisco, Cal., for plaintiff.

Benjamin Lipsitz, Baltimore, Md., and Arthur J. Levine, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

Atari, Inc., holder of a copyright on the electronic video game "Asteroids," seeks to

enjoin defendants Amusement World, Inc., and its president Stephen Holniker, from manufacturing or distributing any product in violation of plaintiff's copyright.

In October, 1979, plaintiff Atari, introduced "Asteroids," a video game in which the player commands a spaceship through a barrage of space rocks and enemy spaceships. Plaintiff has sold 70,000 copyrighted "Asteroids" games for a total of $125,000,-000, making "Asteroids" the largest-selling video game ever (not counting sales in Japan).

Defendant Amusement World, Inc., is a small closely-held corporation employing a total of five people. Its business has consisted largely of repair work on coin-operated games, but recently it has attempted to enter the lucrative video business by producing and distributing a video game called "Meteors."

On March 13, 1981, plaintiff first became aware that defendants were selling "Meteors," which plaintiff alleges is substantially similar to "Asteroids." On March 18, 1981, plaintiff sent defendants a cease and desist letter, which defendants have ignored. Plaintiff then filed suit and now seeks injunctive relief.

THE GAMES

Each of the two video games is contained in a cabinet with a display screen and a control panel for the player. The course of the game is controlled by a computer program, which has been chemically implanted in printed circuit boards inside the cabinet. When no one is playing the game, the machine is in the so-called "attract mode," in which there appears on the display screen an explanation of the game and/or a short simulated game sequence, which is intended to attract customers. Placing a coin in the machine causes it to go into "play mode," in which the computer program generates scenes of dangerous situations, to which the player responds by pressing various buttons on the control panel.

The principle of the two games is basically the same. The player commands a spaceship, represented by a small symbol that appears in the center of the screen. During the course of the game, symbols representing various sized rocks drift across the screen, and, at certain intervals, symbols representing enemy spaceships enter and move around the screen and attempt to shoot the player's spaceship. Four control buttons allow the player to rotate his ship clockwise or counterclockwise, to move the ship forward, and to fire a weapon. A variety of appropriate sounds accompany the firing of weapons and the destruction of rocks and spaceships.

Many of the design features of the two games are similar or identical. In both games:

(1) There are three sizes of rocks.

(2) The rocks appear in waves, each wave being composed initially of larger rocks.

(3) Larger rocks move more slowly than smaller ones.

(4) When hit, a large rock splits into two medium rocks, a medium rock splits into two small ones, and a small rock disappears.

(5) When a rock hits the player's spaceship, the ship is destroyed.

(6) There are two sizes of enemy spaceships.

(7) The larger enemy spaceship is an easier target than the smaller one.

(8) The player's ship and enemy ships shoot projectiles.

(9) When a spaceship's projectiles hit a rock or another ship, the latter is destroyed immediately.

(10) The destruction of any rock or spaceship is accompanied by a symbol of an explosion.

(11) When an enemy spaceship is on the screen, the player hears a beeping tone.

(12) There is a two-tone beeping noise in the background throughout the game, and the tempo of this noise increases as the game progresses.

(13) The player gets several spaceships for his quarter. The number of ships remaining is displayed with the player's score.

(14) The score is displayed in the upper left corner for one player and the upper right and left corners for two players.

(15) The control panels are painted in red, white, and blue.

(16) Four control buttons from left to right, rotate the player's spaceship counter-clockwise, rotate it clockwise, move it forward, and fire the weapon.

(17) When a player presses the "thrust" button, his spaceship moves forward and when he releases the button the ship begins to slow down gradually (although it stops more quickly in "Meteors").

(18) The player gets an extra spaceship if he scores 10,000 points.

(19) Points are awarded on an increasing scale for shooting (a) large rock, (b) medium rock, (c) small rock, (d) large alien craft, (e) small alien craft.

(20) When all rocks are destroyed a new wave of large rocks appears.

(21) Each new wave of rocks has progressively more large rocks than the previous waves to increase the challenge of the game.

(22) A general overhead view of the battle field is presented.

There are also a number of differences between the games:

(1) "Meteors" is in color, while "Asteroids" is in black and white.

(2) The symbols for rocks and spaceships in "Meteors" are shaded to appear three-dimensional, unlike the flat, schematic figures in "Asteroids."

(3) The rocks in "Meteors" appear to tumble as they move across the screen.

(4) "Meteors" has a background that looks like distant stars.

(5) At the beginning of "Meteors," the player's spaceship is shown blasting off the earth, whereas "Asteroids" begins with the player's spaceship in outer space.

(6) The player's spaceship in "Meteors" rotates faster.

(7) The player's spaceship in "Meteors" fires faster and can fire continuously, unlike the player's spaceship in "Asteroids," which can fire only bursts of projectiles.

(8) The pace of the "Meteors" game is faster at all stages.

(9) In "Meteors," after the player's spaceship is destroyed, when the new spaceship appears on the screen, the game resumes at the same pace as immediately before the last ship was destroyed; in "Asteroids" the game resumes at a slower pace.

The necessary elements for copyright infringement have been stated succinctly in 3 Nimmer, *The Law of Copyright,* § 13.01:

> Reduced to most fundamental terms, there are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff, and copying by the defendant.

## OWNERSHIP OF THE COPYRIGHT

■ As stated by *Nimmer, supra,* § 13.01(A):

> Plaintiff's ownership in turn breaks down into the following constituent parts: (1) Originality in the author, (2) copyrightability of the subject matter, (3) citizenship status of the author such as to permit a claim of copyright, (4) compliance with applicable statutory formalities, and (5) (if the plaintiff is not the author) a transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff the valid copyright claimant.

The copyright registration certificate provides *prima facie* evidence of the above elements of the claim of ownership:

> In any judicial proceedings, the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. . . .

17 U.S.C. § 410(c). Plaintiff entered into evidence its certificate of copyright registration, and defendants challenge only the second and fourth elements of copyright ownership. Therefore, the Court finds for the plaintiff on the remaining elements and addresses only the two challenged elements.

■ Defendants challenge the copyrightability of plaintiff's video game. However, the "Asteroids" game clearly fits the Act's definitions of copyrightable material. The Act includes among the types of works of authorship that may be copyrighted "motion pictures and other audiovisual works." 17 U.S.C. § 102(a)(6). The Act, 17 U.S.C. § 101, defines "audiovisual works" as:

works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

"Motion pictures" are defined as:

audiovisual works consisting of a series of related images which, when shown in succession, impart an impression of motion, together with any accompanying sounds, if any.

*Id.*

Defendant contends that plaintiff has not properly copyrighted the "Asteroids" game, arguing that the original work of authorship is the computer program, as embodied in the printed circuit board.[1] Plaintiff filed a video-tape of what appeared on the display screen during one of an infinite number of possible game sequences with the copyright office, rather than the printed circuit board. Defendant argues that this registration affords no protection for the underlying computer program/printed circuit board.

■■ Defendants' analysis is faulty, because it fails to distinguish between the

work and the medium in which it is fixed. In order to receive a copyright, a work must be both copyrightable (that is, it must fit one of the definitions of a copyrightable work) and fixed in a tangible medium of expression. 17 U.S.C. § 102(a). Plaintiff's "work," the thing that plaintiff has created and desires to protect, is the visual presentation of the "Asteroids" game. That work is copyrightable as an audiovisual work and as a motion picture. 17 U.S.C. § 101; *Stern Electronics, Inc. v. Kaufman, et al.,* 523 F.Supp. 635 (E.D.N.Y., 1981) (rejecting defendant's claims that the video game's presentation was not an original work and that only the computer program could be considered an original work); *Midway Mfg. Co. v. Drikschneider, et al.,* 543 F.Supp. 466 (D.Neb., 1981) (rejecting a similar claim). Plaintiff's work also happens to be fixed in the medium of circuitry on a printed circuit board. This follows from the definition in 17 U.S.C. § 102 of a tangible medium of expression as a medium "from which [the work] can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine." A video game's printed circuit board is clearly such a medium of expression, since the "work," the audiovisual presentation, can be communicated from the printed circuit board with the aid of the video game's display screen. *See Midway, supra,* at 13–14. Thus, plaintiff's work meets both the requirements of copyrightability and fixation and is entitled to copyright protection. The specific medium in which the work is fixed is irrelevant—as long as a copyrightable work is fixed in some tangible medium, the work is entitled to copyright protection. 17 U.S.C. § 101. The owner of a copyrightable work need not, and indeed, cannot copyright the medium in which the work is fixed.

■ Defendants also argue that plaintiff is attempting to copyright an idea, rather than the expression of an idea. The Copyright Act adopted the longstanding common law doctrine that this is impermissible. 17

---

1. Defendant uses the term "read-only memory" (ROM), which is the electronic circuit that consists of the thousands of tiny "switches" that have been chemically imprinted on the printed circuit board.

U.S.C. § 102(b). Apparently defendants are claiming that plaintiff is attempting to monopolize the use of the idea of a video game in which the player fights his way through asteroids and spaceships. Defendants cite the case of *Herbert Rosenthall v. Kalpakian,* 446 F.2d 738 (9th Cir. 1971), in which the court held that plaintiff could not copyright his jewelled pin in the shape of a bee because such a copyright would amount to a copyright of the *idea* of a jewelled bee pin. The court based this holding on the finding that the idea of a jewelled bee pin is capable of only one expression, and, therefore, when defendant used plaintiff's idea of a jewelled bee pin, as defendant was entitled to do, it was inevitable that defendant's pin would look like plaintiff's pin. The critical difference in this case is that the idea of a video game involving asteroids is a much more general idea than the rather specific concept of a jewelled pin in the shape of a bee, and the former is capable of many forms of expression. Thus, when plaintiff copyrighted his particular expression of the game, he did not prevent others from using the idea of a game with asteroids. He prevented only the copying of the arbitrary design features that makes plaintiff's expression of this idea unique. These design features consist of the symbols that appear on the display screen, the ways in which those symbols move around the screen, and the sounds emanating from the game cabinet. Defendants are entitled to use the idea of a video game involving asteroids, so long as they adopt a different expression of the idea—*i.e.,* a version of such a game that uses symbols, movements, and sounds that are different from those used in plaintiff's game.

■ Defendants' second challenge concerns plaintiff's compliance with the applicable statutory procedures for registering a copyright. The Copyright Act requires the registrant to deposit two "complete copies" of the work, 17 U.S.C. § 408. Plaintiff submitted a videotape of one game sequence, and defendants contend that this is not a complete copy of the "Asteroids" game. However, the Copyright Office Regulation, 37 C.F.R. 202.20(d), allow the Regis-

ter of Copyrights to permit the deposit of only one copy or "alternative identifying material." Given the bulkiness and cost of the actual video game, a video tape of the audiovisual presentation in the game is a reasonable "alternative identifying material." *See Midway, supra,* Findings 15, 20, and 25; *Stern, supra,* at 8.

## INFRINGEMENT BY DEFENDANTS

■ Since direct evidence of copying is seldom available, plaintiff may prove copying by showing that defendants had access to plaintiff's work and that the two works are substantially similar. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir. 1977). Access was shown indirectly by evidence that plaintiff's work had been widely disseminated. *See Detective Comics, Inc. v. Bruns Publication, Inc.,* 28 F.Supp. 399 (S.D.N.Y.1939), *mod.,* 111 F.2d 432 (2d Cir. 1940).

Therefore, the crucial issue is whether defendants' game, "Meteors," is substantially similar to plaintiff's game, "Asteroids." Substantial similarity is determined by a general comparison of the two works:

'Substantial similarity' is to be determined by the 'ordinary observer' test. Judge Learned Hand in defining this test stated there is substantial similarity where 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.' *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960). More recently this court formulated the test as 'whether an average lay observer would recognize the alleged copy as having been appropriated from the copyright work.' *Ideal Toy Corp. v. Fab-Lu Ltd.,* 360 F.2d 1021, 1022 (2d Cir. 1966). And, of course, by definition, '[t]he copying need not be of every detail so long as the copy is substantially similar to the copyrighted work.' *Comptone Co. v. Rayex Corp.,* 251 F.2d 487, 488 (2d Cir. 1958) . . . .

*Novelty Textile Mills, supra,* at 1093. Another court has held that a work is substantially similar to a preceding work when it captures the "total concept and feel" of the first work. *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1110 (9th Cir. 1970), *quoted in Sid and Marty Krofft Television v. McDonald's Corp.,* 562 F.2d 1157, 1167 (9th Cir. 1977).

However, in applying the "ordinary observer" test, a court must also apply the principles of the law of copyright. One of the most basic of these is the concept that, while one's expression of an idea is copyrightable, the underlying idea one uses is not. *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954); 17 U.S.C. § 102(b). A corollary to this principle is that when an idea is such that *any* use of that idea *necessarily* involves certain forms of expression, one may not copyright those forms of expression, because to do so would be in effect to copyright the underlying idea. The classic case illustrating this concept is *Kalpakian, supra.* In that case, the court held that plaintiff could not copyright his version of a jewelled bee pin, because the idea of such a pin was capable of only one expression, and a copyright on his expression would amount to a copyright on the basic idea.

This principle must also apply in less extreme cases in which a creator's expression of an idea includes some forms of expression that are essential to the idea (*i.e.,* forms of expression which cannot be varied without altering the idea) and some forms of expression that are not essential to the idea. In such a case, the latter forms of expression are copyrightable, but the former are not, because if the creator could copyright the essential forms of expression, then others would effectively be barred from using the underlying idea.

This doctrine has been recognized by courts in a variety of situations. In *Rehyer v. Children's Television Workshop,* 533 F.2d 87, 91 (2d Cir. 1976), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588, the court stated that:

Another helpful analytic concept is that of *scenes a faire,* sequences of events which necessarily follow from a common theme. "[S]imilarity of expression . . . which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity." 1 *Nimmer* § 143.11 at 626.2; *see* Yankwich, *Originality in the Law of Intellectual Property,* 11 F.R.D. 457, 462 (1951). Copyrights, then, do not protect thematic concepts or scenes which necessarily must follow from certain similar plot situations.

The court in *Alexander v. Haley,* 460 F.Supp. 40, 45 (S.D.N.Y.1978), held that "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic" are not protected by the copyright laws. The court listed a number of types of incidents that are not copyrightable in a slave story:

> attempted escapes, flights through the woods pursued by baying dogs, the sorrowful or happy singing of slaves . . . . scenes portraying sex between male slave owners and female slaves and the resentment of female slave owners . . . slave owners complaining about the high price of slaves . . . .

*Id.* at 45 and n.7.

In *Franklin Mint Corp. v. Nat. Wildlife Art Exchange,* 575 F.2d 62 (3d Cir. 1978), *cert. denied,* 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193, the court considered two paintings of a pair of cardinals. The court noted that:

> There are indeed obvious similarities. Both versions depict two cardinals in profile, a male and a female perched one above the other on apple tree branches in blossom. But there are also readily apparent dissimilarities in the paintings in color, body attitude, position of the birds and linear effect. In one, the male cardinal is perched on a branch in the upper part of the picture and the female is below. In the other, the positions are reversed. In one, the attitude of the

male is calm; in the other, he is agitated with his beak open. There is a large yellow butterfly in "Cardinals on Apple Blossom," and none in "The Cardinal." Other variances are found in the plumage of the birds, the foliage, and the general composition of the works.

The court also observed that the nature of the idea, namely a painting of cardinals, necessarily limits the forms of expression that can be utilized in articulating the idea:

> Expert testimony described conventions in ornithological art which tend to limit novelty in depictions of the birds.

Given this, the court said that "[a] pattern of differences is sufficient to establish a diversity of expression rather than only an echo," and the court affirmed the lower court holding of no copyright infringement.

This Court has held that plaintiff is entitled to a copyright on "Asteroids," because the idea of a video game in which the player shoots his way through a barrage of space rocks is an idea that is sufficiently general so as to permit more than one form of expression. However, under the doctrine set forth above, the Court must be careful not to interpret plaintiff's copyright as granting plaintiff a monopoly over those forms of expression that are inextricably associated with the idea of such a video game. Therefore, it is not enough to observe that there are a great number of similarities in expression between the two games. It is necessary to determine whether the similar forms of expression are forms of expressiongrhat simply cannot be avoided in any version of the basic idea of a video game involving space rocks.[2]

■ There are, as noted *supra,* a number of similarities in the design features of the two games. However, the Court finds that most of these similarities are inevitable, given the requirements of the idea of a game involving a spaceship combatting space rocks and given the technical demands of the medium of a video game. There are certain forms of expression that one must necessarily use in designing a video game in which a player fights his way through space rocks and enemy spaceships. The player must be able to rotate and move his craft. All the spaceships must be able to fire weapons which can destroy targets. The game must be easy at first and gradually get harder, so that bad players are not frustrated and good ones are challenged. Therefore, the rocks must move faster as the game progresses. In order for the game to look at all realistic, there must be more than one size of rock. Rocks cannot split into very many pieces, or else the screen would quickly become filled with rocks and the player would lose too quickly. All video games have characteristic sounds and symbols designed to increase the sensation of action. The player must be awarded points for destroying objects, based on the degree of difficulty involved.

All these requirements of a video game in which the player combats space rocks and spaceships combine to dictate certain forms of expression that must appear in any version of such a game. In fact, these requirements account for most of the similarities between "Meteors" and "Asteroids." Similarities so accounted for do not constitute copyright infringement, because they are part of plaintiff's idea and are not protected by plaintiff's copyright.

In light of this conclusion that the similarities in the forms of expression are inevitable, given the idea and the medium, the large number of dissimilarities becomes particularly significant. Given the unavoid-

2. This determination requires a type of close analysis that the court in *Sid & Marty Krofft, supra,* 562 F.2d at 1164- 65, rejected as inappropriate in the subjective, "ordinary observer" test for substantial similarity. However, even that court implicitly recognized the reality that the finder of fact must in effect make a detailed comparison of the two works in order to reach a general, subjective conclusion regarding substantial similarity. *Id.* at 1167 n.9. Moreover, the fact that the underlying idea here is a type of video game, rather than just an idea for a story or a game, raises the possibility that certain forms of expression are required by the medium itself. Given that possibility, a broadbrush observation that the two games have many similar forms of expression is not a sufficient basis on which to conclude that the games are substantially similar.

**230**

able similarities in expression, the Court finds that the ordinary player would regard the aesthetic appeal of these two games as quite different. The overall "feel" of the way the games play is different. In "Meteors" the symbols are more realistic, the game begins with the player's spaceship blasting off from earth, and the player's spaceship handles differently and fires differently. "Meteors" is faster-paced at all stages and is considerably more difficult than "Asteroids."

It seems clear that defendants based their game on plaintiff's copyrighted game; to put it bluntly, defendants took plaintiff's idea. However, the copyright laws do not prohibit this. Copyright protection is available only for expression of ideas, not for ideas themselves. Defendants used plaintiff's idea and those portions of plaintiff's expression that were inextricably linked to that idea. The remainder of defendants' expression is different from plaintiff's expression. Therefore, the Court finds that defendants' "Meteors" game is not substantially similar to and is not an infringing copy of plaintiff's "Asteroids" game.

Accordingly, for the reasons stated herein, it is this 27th day of November, 1981, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's motion for preliminary injunction BE, and the same IS, hereby DENIED; and

2. That judgment BE, and the same IS, hereby entered in favor of the defendants.