**ATARI GAMES CORPORATION, Plaintiff,**

v.

**Ralph OMAN, United States Register of Copyrights, Defendant.**

**Civ. A. No. 88–0021 JHP.**

United States District Court, District of Columbia.

May 25, 1988.

Robert S. Budoff, Howrey & Simon, Washington, D.C., for plaintiff.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN H. PRATT, District Judge.

The narrow question presented by this action is whether the United States Register of Copyrights ("Register") abused his discretion in denying plaintiff's application to register a claim to copyright in a video game entitled "BREAKOUT." Plaintiff Atari Games Corporation ("Atari") created BREAKOUT in 1975,[1] and introduced and began marketing the game the following year with immediate and immense success. More than a decade later, on February 6, 1987, Atari sought registration by the Register of a copyright to BREAKOUT.[2] On February 13, 1987, and again upon reconsideration on May 22, 1987, the Copyright Office refused to register the copyright on the basis that the work "did not contain at least a minimum amount of original pictorial or graphic authorship, or authorship in sounds." Feb. 13, 1987 letter at 1, included in Administrative Record. Finally, by letter dated December 7, 1987, the Copyright Office issued its final agency action, again refusing to register the copyright in BREAKOUT.

Plaintiff filed the instant action on January 6, 1988, challenging the agency's final action. The parties promptly filed cross-motions for summary judgment, which have been fully briefed. In its initial application for copyright, Atari submitted a terse but accurate description of BREAKOUT's operation:

[T]he player commands a paddle which is movable across the screen. A horizontal band or wall formed by layers of bricks (i.e., rectangles) divides the screen above the paddle. A ball bounces back and forth between the wall and the paddle, rebounding off of each and removing a section of the wall each time it is hit by

---

1. The video game was actually created by plaintiff's predecessor, Atari, Inc. The distinction between plaintiff and its predecessor company is irrelevant to the present discussion.

2. Plaintiff sought expedited processing of its registration request because of "prospective litigation in which we would be acting as plaintiff," such action to commence in federal court in Illinois or California. Application for Registration at 1.

the ball. Each time a section or "brick" is removed the player scores points. When the player misses the ball with the paddle, the ball is replaced.

Synopsis of Deposit for Copyright Registration at 1. This characterization makes clear that BREAKOUT is a form of ball-and-paddle game, not entirely dissimilar to a solitary ping pong or tennis game. It is the audiovisual display and accompanying sounds of BREAKOUT—*i.e.*, the "audiovisual work"—that Atari seeks to have registered for copyright protection.

There can be no doubt that video games, like other audiovisual works, are entitled to copyright protection provided they satisfy the prerequisites for copyrightability under the Copyright Act ("Act"), 17 U.S.C. § 101 *et seq.*[3] Section 102 of the Act provides for the copyright of "original works of authorship." 17 U.S.C. § 102. This language isolates two watermarks of a copyrightable work: it must be "original"—*i.e.*, a work of independent creation—and it must be a "work of authorship"—*i.e.*, the fruit of artistic expression and intellectual labor. *Reader's Digest Assoc. v. Conservative Digest, Inc.*, 821 F.2d 800, 806 (D.C.Cir.1987) (identifying originality and creativity elements of copyrightable materials); *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.*, 805 F.2d 663, 668 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987) (same). There is no dispute in this case, and the Register expressly recognized, that BREAKOUT originated with or was independently created by Atari. May 22, 1987 letter at 2. The question for the Register, then, was whether the video game is a "work of authorship," that is, whether it is the result of the minimally required amount of creative expression.

The question of whether a particular work reflects a sufficient quantum of crea-

tivity to satisfy the copyright laws is not susceptible to bright line rules or broad principles. *John Muller & Co., Inc. v. New York Arrows Soccer Team,* 802 F.2d 989, 990 (8th Cir.1986) ("[t]here is no simple way to draw the line between 'some creative authorship' and not enough creative authorship"). It is in part for this reason that the Register is entrusted in the first instance with determining whether a work is copyrightable. Such a decision necessarily requires the exercise of informed discretion, and the Register, in part due to having to make such determinations on a daily basis, is generally recognized to possess considerable expertise over such matters. *Norris Industries, Inc. v. International Tel. & Tel. Corp.,* 696 F.2d 918, 922 (11th Cir.), *cert. denied,* 464 U.S. 818, 104 S.Ct. 78, 78 L.Ed.2d 89 (1983) (recognizing "considerable expertise of the Register" where determinations at issue "are routinely made by the Register and are unquestionably related to the substantive area of the agency's business"); *Esquire, Inc. v. Ringer,* 591 F.2d 796, 801–02 (D.C.Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979) (recognizing certain areas in which the Register "has considerable expertise"); *cf. Bouve v. Twentieth Century–Fox Film Corp.,* 122 F.2d 51, 53 (D.C. Cir.1941) (Copyright Act "establishes a wide range of selection within which discretion must be exercised by the Register . . ."). For this reason courts accord deference to the Register's decisions to refuse or accede to copyright registration, and overturn such decisions only if they reflect an abuse of discretion. *Esquire,* 591 F.2d at 805–06; *John Muller & Co.,* 802 F.2d at 990; *Norris Industries,* 696 F.2d at 922.

The court's task, then, is to determine whether the Register abused his discretion in refusing to register Atari's copyright claim in BREAKOUT. The administrative

---

**3.** The Act defines "audiovisual works" as "works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied." 17 U.S.C. § 101. Numerous courts have recog-

nized that video games, as audiovisual works, qualify for copyright protection. *E.g., Atari, Inc. v. North American Phillips Consumer Electronics Corp.,* 672 F.2d 607, 617 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982); *Stern Electronics, Inc. v. Kaufman,* 669 F.2d 852, 857 (2d Cir.1982); *Atari v. Amusement World, Inc.,* 547 F.Supp. 222, 226 (D.Md. 1981).

record consists of not one but three independent decisions rendered by the Copyright Office in consideration of Atari's application for copyright status. As noted above, the copyright examiners assigned to evaluate Atari's application first refused to register Atari's claim by letter issued on February 13, 1987, and later reaffirmed the decision on reconsideration by letter dated May 22, 1987. The third and most important authoritative statement issued from the Register's office on December 17, 1987, this letter constituting the final agency action on Atari's claim. The cumulative impression left by these opinions—totalling some seven single-spaced pages—is that of a thoughtful and well-orchestrated effort to set forth the applicable statutory and regulatory framework, examine the relevant case law, and assess plaintiff's application in light of these pertinent considerations.

The crux of the Register's [4] position is that the audiovisual work presented by Atari "does not contain at least a minimum amount of original pictorial or graphic authorship, or authorship in sounds," and thus does not warrant copyright status. Feb. 13, 1987 letter at 1; *see also* Dec. 7, 1987 letter at 1 (requiring "some non-trivial amount of creative authorship"); May 22, 1987 letter at 2 ("[t]he present work, although independently created, does not contain enough original authorship to be registered as an audiovisual work"). The letters noted that the BREAKOUT display consists of common geometric shapes, four bands of colored rectangles, and three tones heard when the "ball" strikes various objects on the screen. The Register concluded that these features, whether viewed independently or in terms of "the arrangement of these few items on the screen," did not establish a basis on which to premise copyright registration. Dec. 7, 1987 letter at 2.[5] This conclusion rested in part on an interpretation of Copyright Office regulations which preclude copyright registration of "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring...." 37 C.F.R. § 202.1(a) (1987). Finally, the Register reviewed and distinguished cases referenced by Atari which upheld the copyrightability of other video games.[6]

The Register's analysis and conclusion were well within the bounds of his discretion, and reflected a reasonable application of controlling law and copyright regulations to the facts before him. Courts and commentators alike have recognized that there are instances, albeit rare, in which "admittedly independent efforts are deemed too trivial or insignificant to support copyright." 1 M. Nimmer, *Nimmer on Copyright* ("Nimmer") § 2.01[B] at 2–13 (1982); *see also Magic Marketing, Inc. v. Mailing Services of Pittsburgh, Inc.*, 634 F.Supp. 769, 772 (W.D.Pa.1986) (holding that envelopes with lettering "do not exhibit a sufficient degree of creativity to be copyrightable"). It is no less true in the context of video games that a "sequence of images ... might contain so little in the way of particularized form of

---

**4.** The cumulative decision-making process and conclusions of the Copyright Office are herein ascribed to the Register, who retains final agency authority over copyright decisions.

**5.** The creative character of a copyrightable work may reside in the individual components or in the arrangement of those components. *See Reader's Digest,* 821 F.2d at 806 (holding that whereas none of the individual elements of the Reader's Digest magazine cover qualifies for copyright protection, "the distinctive arrangement and layout of those elements" is entitled to protection). The passage quoted in the text makes clear that the Register considered BREAKOUT both in its entirety and in terms of its individual elements, and found neither to be

sufficiently creative to warrant copyright protection. *See also* Dec. 7, 1987 letter at 1 (viewing work "as a whole"). The December 7 letter constituting final agency action expressly considered this circuit's opinion in *Reader's Digest. See* letter at 1. It was not unreasonable for the Register to conclude that, unlike in *Reader's Digest,* there is nothing "distinctive" in the arrangement or layout of BREAKOUT.

**6.** Moreover, the agency letters repeatedly assured Atari that the present agency action in no way precluded Atari from registering a claim in the computer program itself, rather than the noncopyrightable video display and accompanying sounds. Feb. 13, 1987 letter at 1; Dec. 7, 1987 letter at 2.

expression as to be only an abstract idea portrayed in noncopyrightable form." *Stern Electronics, Inc. v. Kaufman*, 669 F.2d at 857 (dictum). It simply is not the case, in short, that video games are *per se* copyrightable, or by definition more expressive and creative than other artistic mediums. The Register cited the above-quoted passages, and apparently concluded that BREAKOUT is one of those uncommon instances in which any expressive value contained therein is *de minimis*, and thus not sufficient for copyright purposes.

This conclusion does not constitute an abuse of discretion, whether BREAKOUT is viewed in a vacuum or in comparison to video games which have been copyrighted. In reaching its conclusion, the Register construed both the Copyright Act, which it is entrusted to administer, and the Act's implementing regulations. In this context judicial review is particularly limited. *Esquire*, 591 F.2d at 800–02 (according considerable weight to Register's interpretation of copyright implementing regulation); *Chemical Mfrs. Assoc. v. N.R.D.C.*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985) (judicial review circumscribed when plaintiff challenges agency's construction of a statute it was entrusted to administer). The BREAKOUT display, as noted above, consists of a rectangular "paddle" directing a circular "ball" into colored rectangular "bricks," in addition to audio signals indicating when the ball collides with the other characters. The Register reasonably might have concluded that the only ostensibly creative aspect of BREAKOUT is not the components themselves, nor their arrangement, but rather the very idea of the paddle-and-ball game which BREAKOUT represents in video form. Perhaps the most hallowed principle of copyright law, however, is that copyright protection extends not to ideas, but to expressions of ideas. 17 U.S.C. § 102(b); 3 Nimmer § 13.03[E], at 13–51 to 13–52 (stat-

ing this as "an axiom of copyright law"); *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954); *Baker v. Selden*, 101 U.S. 99, 102–03, 25 L.Ed. 841 (1879). Thus, copyright protection does not extend to games themselves. *Atari, Inc.*, 672 F.2d at 615; *Anti–Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 300 n. 1 (9th Cir.1979).

BREAKOUT can be understood, and apparently was understood by the Register, as little more than a stock description of a paddle-and-ball game, inseparable in any principled manner from the idea which it embodies. This is quite distinct from video games which feature expressive and artistically creative renditions of an idea, and which thereby merit copyright protection. *See Atari*, 672 F.2d at 617 (recognizing copyright status of "PAC–MAN" video display because "[t]he expression of the central figure as a 'gobbler' and the pursuit figures as 'ghost monsters' distinguishes PAC–MAN from conceptually similar video games"); *Universal City Studios, Inc. v. Nintendo Co.*, 615 F.Supp. 838, 859–60 (S.D.N.Y.1985) ("[t]he interaction of the characters, obstacles, background, and music in [the video game] Donkey Kong are [sic] arbitrary, fanciful, and sufficiently distinctive" so as to warrant copyright protection against imitators); *Atari*, 547 F.Supp. at 229 (distinguishing generic idea of space-attack game from creative expression portrayed in video game "Asteroids").[7]

In short, the Register, drawing upon his expertise and experience in this field, reasonably concluded that BREAKOUT lacked the "minimal artistic expression" necessary to render copyrightable the design and configuration of a video game display. 1 Nimmer § 2.18[H][3]; *Universal City Studios*, 615 F.Supp. at 858. That BREAKOUT was from its introduction popular and profitable is quite beside the point, plaintiff's protests notwithstanding. The copyrightability of a

---

7. Courts have characterized "PAC–MAN" as an expressive rendition of a maze-and-chase game, *Atari*, 672 F.2d at 671, nn. 9, 10, "Donkey Kong" as merely one version of a hero-rescues-heroine-from-villain game, *Universal City Studios, Inc.*, 615 F.Supp. at 859, and "Asteroids" as Atari's depiction of a space-attack game, *Atari*,

547 F.Supp. at 229. In each case the chosen expression was clearly distinct and separable from the idea of the game itself. In the present case, on the other hand, the Register was understandably at a loss to separate Atari's expression of a ball-and-paddle game from the game itself.

work is defined not by its financial returns or public favor, but rather by its originality and creativity. *Cf. Financial Information, Inc. v. Moody's Investors Service, Inc.,* 808 F.2d 204, 207 (2d Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987) (copyrightability not defined by "sweat of author's brow," but rather by result of such efforts); *Gardenia Flowers, Inc. v. Joseph Markovits, Inc.,* 280 F.Supp. 776 (S.D.N.Y.1968).[8] Moreover, the court has no occasion to consider whether on the facts presented the Register or a court might just as reasonably have reached another conclusion. The court may not substitute its judgment for that of the Register, but must instead subject the Register's determination to an "abuse of discretion" inquiry. We are satisfied, upon independent evaluation of the record herein, that the Register's action was an appropriate exercise of his discretion, and well within the scope of his duties.

The issue of copyrightability is typically susceptible to resolution on summary judgment. *Magic Marketing,* 634 F.Supp. at 771; *Carol Barnhart, Inc. v. Economy Cover Corp.,* 773 F.2d 411 (2d Cir.1985). In this case there are no material issues of disputed fact, and judgment may be entered as a matter of law.[9] Accordingly, it is by the court this 24th day of May, 1988

---

**8.** To cite but one example, a fraudulent reproduction of a Rembrandt painting might be popular and even profitably auctioned without evidencing even a scintilla of artistic expression or intellectual labor.

**9.** After arguing in its memorandum in support of summary judgment that there remain no outstanding issues of material fact, plaintiff countered defendant's cross-motion for summary judgment by alleging that discovery is required beyond the present record. Specifically, Atari contends that it must depose the Copyright Office employees involved in the decision not to register the copyright in BREAKOUT in order to determine the propriety of their conduct.

Of course, Atari is not estopped by the filing of its own summary judgment motion from now asserting disputed issues of fact in opposition to defendant's cross-motion. *Garrett Biblical Institute v. American University,* 163 F.2d 265, 266 (D.C.Cir.1947); *Zook v. Brown,* 748 F.2d 1161, 1166 (7th Cir.1984); *Slay v. State of Alabama,*

ORDERED that plaintiff's motion for summary judgment is hereby denied, and it is

ORDERED that defendant's motion for summary judgment is hereby granted, and it is

ORDERED that judgment is hereby awarded in favor of defendant, and it is

FURTHER ORDERED that this case shall stand dismissed.

636 F.2d 1045, 1047 (5th Cir.1981). Nevertheless, the court is mindful that "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *see also AT & T Information Systems, Inc. v. General Services Administration,* 810 F.2d 1233, 1236 (D.C.Cir. 1987). We need not delve into the Register's thought processes to determine whether his refusal to register plaintiff's work constituted an abuse of discretion. The comprehensive administrative record, which includes all correspondence between the parties as well as an instructive videotape depicting BREAKOUT's display and the manner in which it is played, provides a satisfactory basis on which to evaluate the Register's decision-making processes and conclusions derived therefrom. Plaintiff's request for additional discovery is therefore denied.