**READER'S DIGEST ASSOCIATION, INC.**

v.

**CONSERVATIVE DIGEST, INC., et al., Appellants.**

**READER'S DIGEST ASSOCIATION, INC., Appellant**

v.

**CONSERVATIVE DIGEST, INC., et al.**

Nos. 86–5495, 86–7004.

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1987.

Decided June 30, 1987.

Manuel Klausner, Los Angeles, Cal., of the Bar of the Supreme Court of California, pro hac vice by special leave of Court, with whom Glenn J. Sedam, Jr. and Edward S.

Culbertson, Fairfax, Va., were on the brief, for appellants/cross-appellees.

Arthur J. Levine, with whom Jay L. Witkin, Washington, D.C., was on the brief for appellee/cross-appellant.

Before WALD, Chief Judge, and MIKVA and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Reader's Digest and Conservative Digest, along with several of its officers, bring cross-appeals from a district court order issued after a short bench trial. In the court below, Reader's Digest sued Conservative Digest, as well as its publisher, executive publisher, and editor-in-chief, for copyright and trade dress infringement. The district court dismissed all claims against the publisher and executive publisher of Conservative Digest and one of the claims against Conservative Digest and its editor-in-chief. The court sustained the remaining claims against Conservative Digest and its editor-in-chief, but ordered a remedy more limited than the remedy Reader's Digest had sought. The court denied all of the parties' requests for attorney's fees. On appeal, Conservative Digest and its editor-in-chief attack the lower court's entry of judgment against them. Reader's Digest challenges the district court's choice of remedy. And all of the parties—Reader's Digest, Conservative Digest, and the three individual defendants— argue that they are entitled to attorney's fees. We deny all of the cross-appellants' claims and affirm the order of the district court. Perhaps our action will end this litigation, which probably should never have started and certainly should long since have ceased.

## I. BACKGROUND

In August of 1985, William R. Kennedy, Jr. bought and became the publisher of Conservative Digest, a monthly periodical of conservative opinion with a paid circulation of about 16,000. Kennedy named James K. Dye and Scott Stanley, Jr. as executive publisher and editor-in-chief of the magazine, respectively. Stanley decided to revise the magazine's appearance and removed Conservative Digest from the newsstands pending establishment of a new format. About two months later, Stanley and Kennedy unveiled the new format at a reception they hosted at the National Press Club in Washington, D.C. The magazine Stanley and Kennedy exhibited at the reception—the October 1985 issue— bore a front cover that strongly resembled the front cover of Reader's Digest in size, shape, and graphic design. At a press conference held during the reception, Stanley acknowledged the similar appearance of the two magazines. "[I]f [Conservative Digest] looks like Reader's Digest," Stanley said, "I'm sure that Wally [DeWitt Wallace, the founder of Reader's Digest] and Lila [his wife] are somewhere up there saying, 'That's great, kids. Keep it up.'"

The current and worldly managers of Reader's Digest had no such enthusiasm for the look-alike result. They immediately contacted Kennedy, Dye, and Stanley and demanded that those persons cease publication of Conservative Digest in its new format. In response, the officers of Conservative Digest promised to use an entirely different cover design beginning with the magazine's December 1985 issue. The officers also notified Reader's Digest that newsstand sale of Conservative Digest had not yet resumed and promised to mail the November 1985 issue of Conservative Digest, then at the printers, to subscribers in a wrapper stating that "[t]his journal is an independent voice of conservative opinion and is not affiliated with any other magazine." The officers of Conservative Digest immediately took steps to fulfill these promises. Nonetheless, Reader's Digest brought this suit against Conservative Digest, Kennedy, Dye, and Stanley.

The complaint Reader's Digest filed essentially raised three charges against each of the defendants. First, the complaint charged that the defendants had infringed the trade dress of Reader's Digest in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1983). Second, the com-

plaint claimed that the defendants had infringed Reader's Digest's copyright in its cover design. Third, the complaint alleged that the defendants had infringed Reader's Digest copyright in eleven anecdotes that had appeared in the magazine. As relief for the alleged copyright infringements, Reader's Digest sought statutory (as opposed to actual) damages of $50,000. As relief for the alleged trade dress infringement, Reader's Digest sought all of the defendants' profits from the publication and sale of the October 1985 and November 1985 issues of Conservative Digest and a permanent injunction prohibiting the defendants from employing specified aspects of the trade dress of Reader's Digest. In addition, Reader's Digest requested attorney's fees.

The district court conducted a two-day bench trial on the claims and issued an unpublished memorandum and order two weeks later. *See Reader's Digest Ass'n v. Conservative Digest, Inc.*, 642 F.Supp. 144 (D.D.C.1986). The court dismissed all claims against Dye and Kennedy; it also dismissed the claim against Conservative Digest and Stanley based on Reader's Digest's copyright in anecdotes. The court found in favor of Reader's Digest and against Stanley and Kennedy on the claims alleging infringement of trade dress and infringement of a copyright in Reader's Digest's cover design. In the remedial section of its opinion, the court awarded Reader's Digest $500 in statutory damages for the copyright infringement and issued an injunction for the trade dress infringement that prohibited the defendants from making any further use of the two offending covers. The court awarded Reader's Digest its court costs, but denied its request for attorney's fees. The court also denied the prevailing defendants' claims for attorney's fees.

The defendants filed a notice of appeal from the lower court's decision, and Reader's Digest subsequently filed a cross-appeal. On appeal, Conservative Digest and Stanley request this court to reverse the district court's determinations that they infringed the trade dress of Reader's Digest and infringed a copyright in the magazine's cover design. In addition, all of the defendants petition this court for attorney's fees. Reader's Digest, for its part, challenges the remedy that the district court ordered for the trade dress infringement: Reader's Digest renews its request for all of the profits from the October 1985 and November 1985 issues of Conservative Digest and seeks a broader injunction than the lower court granted. Reader's Digest also petitions for attorney's fees.

## II. DISCUSSION

### A. *Trade Dress Infringement*

 Section 43(a) of the Lanham Act provides that

[a]ny person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same ... shall be liable to a civil action by any person ... who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a). It is well established that this section creates a federal cause of action for trade dress infringement. *See, e.g., LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983). " 'Trade dress' involves the total image of a product and may include features such as size, shape, color or color combinations, texture, [and] graphics." *Harland*, 711 F.2d at 980. To prevail on a claim for trade dress infringement under section 43(a), a plaintiff must make three showings. First, the plaintiff must demonstrate that the trade dress of its product is primarily non-functional. *See, e.g., id.* Second, the plaintiff must establish that the trade dress of its product has acquired "secondary meaning"—*i.e.*, that the public has come to recognize the trade dress as associated with the plaintiff's product. *See, e.g., LeSportsac*, 754 F.2d at 75. Third, the plaintiff must show

that the defendant's trade dress is likely to confuse or mislead consumers, either by causing them to think that the defendant's product *is* the plaintiff's product or by causing them to think that the two products come from the same source. *See, e.g., id.; American Ass'n for the Advancement of Science v. Hearst*, 498 F.Supp. 244, 258 (D.D.C.1980). A lower court's findings with respect to these three issues are entitled to substantial deference on appeal; a reviewing court may reverse such findings only if they are clearly erroneous. *See, e.g., Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 857 (7th Cir.1982).

■ The district court decided that Reader's Digest had proved trade dress infringement. Although the court made no specific finding that the trade dress of Reader's Digest is primarily non-functional, this finding is implicit in the district court's opinion, and none of the parties challenges the decision on this ground. The court specifically held that the trade dress of Reader's Digest had acquired secondary meaning. In this part of the decision, the court found that Reader's Digest had used its trade dress for six years and that wide distribution and extensive promotion of the magazine during this period had succeeded in identifying the trade dress with the magazine in the public mind. The court buttressed this determination by noting the settled rule that proof of intentional copying is probative of secondary meaning, *see, e.g., M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 448–49 (4th Cir.1986) (reasoning that few persons would intentionally copy a trade dress that had not acquired secondary meaning), and finding that Conservative Digest and Stanley had intentionally copied Reader's Digest's trade dress. The district court then held that the trade dress of the October and November issues of Conservative Digest was likely to mislead consumers into thinking that Conservative Digest and Reader's Digest came from the same source, because the trade dress of these issues was strikingly similar to the trade dress of Reader's Digest.

Conservative Digest and Stanley first contest the district court's finding that the trade dress of Reader's Digest had acquired secondary meaning. They essentially claim that the proof Reader's Digest offered at trial was insufficient to allow the court to make this finding. According to defendant-appellants, the trial revealed no evidence of intentional copying and thus the district court had no basis for stating that the intentional copying of Reader's Digest's cover design supported a finding of secondary meaning. In addition, Stanley and Conservative Digest claim that the court could not properly rely on the sales and promotion of Reader's Digest to support this determination. Stanley and Conservative Digest aver that proof of wide circulation and extensive promotion is not probative in this context because the sales and advertising of Reader's Digest may not have succeeded in endowing the trade dress of the magazine with secondary meaning.

We reject these claims. The district court did not clearly err in holding that the proof supported a finding that the trade dress of Reader's Digest had acquired secondary meaning. Contrary to defendant-appellants' assertions, the court had before it substantial evidence of intentional copying. The striking similarity between the trade dress of Reader's Digest and the trade dress of Conservative Digest is itself probative of intentional copying. *See* 2 J. McCarthy, Trademarks and Unfair Competition §§ 23:33–23:34 (2d ed. 1984). In addition, the court heard extensive testimony regarding the way in which Stanley had designed the trade dress of the October and November issues of Conservative Digest. On the basis of all of this evidence, the court could have reached, as it did in fact reach, a reasoned conclusion that deliberate copying had occurred. The court also properly relied on the evidence of the sales and promotion of Reader's Digest. Courts uniformly have held that evidence of substantial sales and promotion of a product tends to show that the trade dress of the product has acquired secondary meaning. *See, e.g., President and Trustees of Colby College v. Colby College-New Hampshire*, 508 F.2d 804, 808 (1st Cir.1975). Such

proof, of course, is not dispositive. A company's promotional efforts may not succeed in endowing the trade dress of its product with secondary meaning; similarly, a company may achieve high sales, but fail to impress a trade dress on the public mind. But to say that proof of extensive advertising and substantial sales may not be probative of secondary meaning is to defy both logic and common sense. The district court in this case carefully considered the evidence concerning sales and promotion and arrived at the justifiable conclusion that it strongly supported Reader's Digest's position. This evidence, in combination with the evidence concerning intentional copying, was more than sufficient to allow the court to conclude that the trade dress of Reader's Digest had acquired secondary meaning.

Stanley and Conservative Digest also argue that the District court erred in finding that the trade dress of the October and November issues of Conservative Digest was likely to mislead or confuse consumers. In making this argument, defendant-appellants refer to several features of the two issues that allegedly served to prevent confusion. First, defendant-appellants stress that the name "Conservative Digest" appeared prominently on the magazine's cover. Second, they note that the October and November issues of Conservative Digest never appeared on the newsstands; these issues went only to subscribers. Third, Stanley and Conservative Digest emphasize that the November issue was mailed in an outer wrapper stating that Conservative Digest was not associated with any other magazine. In light of these facts, defendant-appellants claim, the district court was not justified in reaching the conclusion that the trade dress of the October and November issues of Conservative Digest was likely to mislead consumers.

We believe, however, that the striking similarity between the trade dress of Reader's Digest and the trade dress of the October and November issues of Conservative Digest provided a firm basis for the district court's determination that Reader's Digest had shown a likelihood of confusion. The particular aspects of the two issues of Conservative Digest to which defendant-appellants point do not undermine this conclusion. The prominence of the name of the product and the method of distributing the product minimized the possibility that consumers would mistake Conservative Digest for Reader's Digest; neither feature, however, reduced the likelihood that consumers would conclude that the two magazines came from the same source. Of course, the disclaimer on the wrapper surrounding the November issue must have prevented some of the readers of that issue from concluding that the two magazines were associated. But the district court's determination is not reversible on the basis of this disclaimer. As an initial matter, Conservative Digest mailed its October issue without any kind of disclaimer. Equally important, many readers of the November issue would not have seen the disclaimer accompanying that issue. Because Conservative Digest printed the disclaimer on a disposable wrapper, only the initial recipients of the magazine—a smaller group than the total number of readers—would have viewed the disclaimer. Thus, we think the lower court fully justified in finding that the trade dress of the October and November issues of Conservative Digest was likely to mislead consumers. And because we have no cause to doubt the propriety of either this finding or the finding of secondary meaning, we affirm the court's decision that Stanley and Conservative Digest infringed Reader's Digest's trade dress.

### B. Copyright Infringement

■ To prevail on a claim of copyright infringement, a plaintiff must make two showings relevant to this case. First, the plaintiff must show that the work allegedly copied is entitled to copyright protection. Second, the plaintiff must show that the defendant copied the work. See 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.01 (1986). The district court found both that the cover design of Reader's Digest is a work entitled to copyright protection and that Stanley and Conservative Di-

gest had copied that design. Conservative Digest and Stanley challenge each of these conclusions. We may reverse the determinations only if they are clearly erroneous. *See, e.g., Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.,* 668 F.2d 699, 702 (2d Cir.1982).

The Copyright Act, 17 U.S.C. § 101 *et seq.* (1977), affords protection to "original works of authorship." 17 U.S.C. § 102(a). Courts have given the term "original" a specific and limited meaning. Originality means only that the work "owes its origin to the author"—*i.e.,* that the work is independently created, rather than copied from other works. *Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 191 F.2d 99, 102 (2d Cir. 1951); *see, e.g., Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1109 (9th Cir.1970). The statute itself provides some indication of the meaning of "works of authorship." The statute lists seven broad categories of works of authorship, one of which is "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). This category is defined to "include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, and models." 17 U.S.C. § 101. The legislative history of the Act further indicates that "the definition of 'pictorial, graphic, and sculptural works' carries with it no implied criterion of artistic taste, aesthetic value, or intrinsic quality." H.R. Rep. No. 1476, 94th Cong., 2d Sess. 51, 54 (1976), U.S.Code Cong. & Admin.News 1976, 5659, 5664, 5667.

■ The district court did not err in finding that the design of Reader's Digest's cover qualifies for protection under the Copyright Act as an "original work of authorship." None of the parties has disputed the originality of the design; all agree that it is an independent creation. The question thus turns on whether the design is a "work of authorship" within the meaning of the statute. We conclude that it is such a work. None of the individual elements of the Reader's Digest cover—ordinary lines, typefaces, and colors—qualifies for copyright protection. But the dis-

tinctive arrangement and layout of those elements is entitled to protection as a graphic work. In a similar case, one court wrote:

> Although the Egyptian lettering may be but an arrangement of letters which themselves were undoubtedly part of the public domain, the distinguishable variation in the arrangement and manner of presentation—the dark background, the particular size of the letters, their spacing, their arrangement into three rows—all combined to give the product authorship worthy of protection....

*Amplex Mfg. Co. v. A.B.C. Plastic Fabricators, Inc.,* 184 F.Supp. 285, 288 (E.D.Pa. 1960); *see also Kaeser & Blair, Inc. v. Merchants' Ass'n,* 64 F.2d 575, 577 (6th Cir.1933) (holding that arrangement of colors and typefaces on letterheads and calling cards was entitled to copyright protection); *Pantone, Inc. v. A.I. Friedman, Inc.,* 294 F.Supp. 545, 547–48 (S.D.N.Y. 1968) (holding that the arrangement and combination of bars of color in a color matching system was entitled to copyright protection). We think this approach proper. Reader's Digest has combined and arranged common forms to create a unique graphic design and layout. This design is entitled to protection under the Copyright Act as a graphic work.

■ We also reject the claim that the district court erred in finding that copying occurred. A court may find copying in a copyright infringement action if the defendant's work is substantially similar to the plaintiff's work and the defendant had access to the plaintiff's work. *See, e.g., Novelty Textile Mills v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir.1977). Both conditions are met in this case. We therefore cannot find clear error in the district court's holding that Conservative Digest and Stanley copied the design of Reader's Digest's cover. Indeed, given the near-identity between the two designs and the absence of evidence suggesting an explanation other than copying for this striking similarity, we cannot see how the district court could have reached a different result.

## C. *Remedial Questions*

■ *1. Injunctive Relief.*—Reader's Digest asked the district court to remedy in part the trade dress infringement by enjoining the defendants from using specified aspects of Reader's Digest's trade dress in the future. In responding to this request, the district court first noted that the Lanham Act authorizes courts to grant injunctive relief for trade dress infringements "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. The district court then denied Reader's Digest's proposed injunction; the court instead issued an injunction prohibiting the defendants only from making further use of the two offending covers. The court reasoned that Reader's Digest had failed to show that Conservative Digest might again attempt to expropriate Reader's Digest's trade dress. Reader's Digest attacks this decision on appeal and asks us to order the lower court to issue Reader's Digest's proposed injunction. We may accept this invitation only if the district court's decision constituted an abuse of the court's discretion. *See, e.g., Ambrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1547 (11th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987).

The trial court did not abuse its discretion by refusing Reader's Digest's request for a broad injunction. When a defendant has ceased its infringing conduct and shows no inclination to repeat the offense, a court may not issue an injunction of the kind Reader's Digest requested. *See, e.g., Schutt Mfg. Co. v. Riddell, Inc.,* 673 F.2d 202, 207 (7th Cir.1982); *Robert Stigwood Group, Ltd. v. Hurwitz,* 462 F.2d 910, 913 (2d Cir.1972). Conservative Digest and Stanley had ceased infringing on Reader's Digest's trade dress. The district court had ample reason to find that they did not intend to infringe again. We therefore affirm the district court's decision to issue an injunction prohibiting the defendants only from further use of the two infringing covers.

■ *2. Profits.*—Reader's Digest also requested the district judge to award it the defendants' profits from the October and November issues of Conservative Digest as relief for the trade dress infringement. The district judge denied this plea on a pair of grounds. First, the court wrote that although "Conservative Digest was grossly irresponsible in copying Reader's Digest design[, Conservative Digest] apparently had no intent to palm off or create confusion among consumers and ceased the infringement before any harm resulted." *Reader's Digest,* 642 F.Supp. at 147. Second, the court observed that Reader's Digest had presented no indication of any diversion of sales or unjust enrichment. Reader's Digest claims that the court erred in refusing to award profits on these grounds.

■ The Lanham Act gives a district court some discretion to award a defendant's profits to a plaintiff whose trade dress has been infringed. The Act provides:

> When a violation of any right ... shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to ... the principles of equity, to recover ... defendant's profits.... If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

15 U.S.C. § 1117. An appellate court may reverse a decision to grant or deny a plaintiff's request for profits under this section only if the decision constitutes an abuse of discretion. *See, e.g., Bandag, Inc. v. Al Bolser's Tire Stores,* 750 F.2d 903, 917 (Fed.Cir.1984).

The district court did not abuse its discretion in refusing Reader's Digest's plea for the defendant's profits. This court has held that a district court generally may award profits under the Lanham Act only when a defendant's infringement was "willful" or in "bad faith." *See Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636, 641 (D.C.Cir. 1982). We also left open the possibility that a court could properly award damages

to a plaintiff when the defendant has been unjustly enriched. *Id.* at 641 n. 9. The district court in this case made findings on both of these issues; it concluded that Reader's Digest had shown neither willful infringement nor unjust enrichment on the part of the defendants. Our review of the trial record persuades us that each of these two findings had ample support. We therefore affirm the district court's decision that Reader's Digest was not entitled to an award of profits.

*3. Attorney's Fees.*—All of the parties to this litigation requested the district court to award them some attorney's fees. Reader's Digest asked for the attorney's fees it expended in suing Stanley and Conservative Digest for infringement of trade dress and infringement of a copyright in cover design. Stanley and Conservative Digest requested the attorney's fees they expended to defend themselves against the claim of infringement of a copyright in anecdotes. Dye and Kennedy sought the attorney's fees they spent in defending themselves against all of Reader's Digest's claims. In other words, each party requested attorney's fees stemming from the claims on which it (or he) had prevailed. The district court denied all of these requests. The court noted that it could award attorney's fees in certain cases under both the Lanham Act, which states that a "court in exceptional cases may award reasonable attorney fees to the prevailing party," 15 U.S.C. § 1117, and the Copyright Act, which provides that a "court in its discretion may ... award a reasonable attorney's fee to the prevailing party," 17 U.S.C. § 505. The court then stated that any award of attorney's fees in this case would be inappropriate. The court reasoned that the plaintiff was not entitled to attorney's fees because it had failed to show willful infringement of Reader's Digest's trade dress or copyright and that the defendants were not entitled to fees "given [their] own unclean hands and the absence of any proof that Reader's Digest's [unsuccessful] claims were frivolous or brought in bad faith." Order at 7. We can overturn this decision only if it constituted an abuse of the trial court's discretion. *See, e.g., Quaker State Oil Refining Corp. v. Kooltone, Inc.,* 649 F.2d 94, 95 (2d Cir.1981) (stating standard of review of attorney's fee awards in Lanham Act cases); *Russell v. Price,* 612 F.2d 1123, 1132 (9th Cir.1979) (stating standard in Copyright Act cases), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980).

We have no doubt that the trial court exercised its discretion properly in declining to award attorney's fees to Reader's Digest. Under the Lanham Act, a court must find willful or bad faith infringement by the defendant in order to award attorney's fees to the plaintiff. *See, e.g., Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1384 (9th Cir.1984); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 771 F.2d 521, 526 n. 2 (D.C.Cir.1985) (dicta). We already have held that the district court had ample reason to find that the infringement in this case was not willful or in bad faith. Once the court made this finding, the court could not properly have awarded attorney's fees to Reader's Digest for the trade dress claim. The standards for awarding attorney's fees to plaintiffs in copyright cases are considerably less clear. Some courts have held that deliberate infringement is a precondition of an award, *see Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 493 (9th Cir.1985), whereas others have permitted awards even when the infringement was not deliberate, *see Lieb v. Topstone Indus.,* 788 F.2d 151, 155–56 (3rd Cir.1986). We need not state our view on this question because under either approach a district court may properly deny a plaintiff's request for attorney's fees when the court reasonably finds—as the court did in this case—that the copyright infringement was not deliberate and that no other factor strongly counsels an award. We therefore affirm the district court's refusal to award attorney's fees to Reader's Digest.

We likewise hold that the court acted properly in refusing the defendants' requests for attorney's fees. In *Noxell, supra,* this court held that a defendant need not show that a plaintiff brought an action in bad faith to obtain attorney's fees

under the Lanham Act. 771 F.2d at 526. We wrote that "[s]omething less than 'bad faith[ ]' ... suffices to mark a case as 'exceptional' " within the meaning of the Lanham Act and later stated that the term "is most reasonably read to mean uncommon, not run-of-the-mine." *Id.* We do not think that Reader's Digest's trade dress claims against Dye and Kennedy (who, as we have noted, are the only defendants to request attorney's fees under the Lanham Act) are exceptional in this sense. Kennedy and Dye were, respectively, the publisher and executive publisher of Conservative Digest. Their positions at the infringing magazine made them natural—indeed, near-inevitable—targets of a trade dress suit. With regard to the copyright claims, courts generally have agreed that defendants are entitled to fees in copyright suits only when the claims are frivolous or are brought in bad faith. *See Roth v. Pritikin,* 787 F.2d 54, 57 (2d Cir.1986); *Jartech, Inc. v. Clancy,* 666 F.2d 403, 407 (9th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982). Reader's Digest's claim that Kennedy and Dye infringed its copyright in a cover design was not frivolous given their positions of authority at Conservative Digest. And the claim that all of the defendants infringed a copyright in anecdotes, although ultimately unsuccessful, also was not frivolous. The similarity between anecdotes that appeared in the October and November issues of Conservative Digest and anecdotes that previously had appeared in Reader's Digest gave Reader's Digest some basis for believing that Conservative Digest had infringed a copyright. We therefore uphold the district court's decision to deny the defendants' requests for attorney's fees.

### III. CONCLUSION

The district court in this case essentially found in favor of the plaintiff and ordered the defendants to pay a penny. In characterizing the decision in this way, we do not mean to denigrate it; indeed, we understand and support the court's approach. Two of the defendants in this case infringed Reader's Digest's trade dress and copyright. The infringement, however, quickly

ceased, and it caused Reader's Digest no discernible damage. We do not fully understand, given these circumstances, why this controversy went to trial. We understand still less why the parties decided to appeal. With the appeal before us, we can do no better than affirm the decision of the district court. That decision, in our view, gave all of the parties precisely what they deserved.

*It is so ordered.*