**MOORE PUBLISHING, INC., an Idaho corporation, Plaintiff,**

**v.**

**BIG SKY MARKETING, INC., an Idaho corporation, and Twin Falls Multiple Listing Service, Defendants.**

**Civ. No. 90–0229–S–MJC.**

United States District Court, D. Idaho.

Nov. 30, 1990.

On Second Motion for Summary Judgment Jan. 11, 1991.

Frank J. Dykas, Law Offices of Frank Dykas, Boise, Idaho, for Moore Pub. Inc.

Jeffrey E. Rolig, Hepworth Nungester & Lezamiz, Twin Falls, Idaho, for Big Sky Marketing, Inc.

Paul S. Street, Danny S. Jackson, Moffatt Thomas Barrett Rock & Fields, Boise, Idaho, for Twin Falls Multiple Listing Service.

## MEMORANDUM DECISION

CALLISTER, Senior District Judge.

The Court has before it a motion for summary judgment filed by defendant Twin Falls Multiple Listing Service (MLS) and a motion for partial summary judgment filed by plaintiff Moore Publishing, Inc. (Moore). The Court heard oral argument on November 1, 1990, and the motions are now ready to be resolved. The Court must determine if there exist any genuine issues of material fact. *See* Fed. R.Civ.P. 56(c).

In 1987, Moore began publishing the "Magic Valley Homes & Real Estate" magazine, a collection of real estate advertisements. The magazine included written descriptions and photographs of residential and commercial properties under the logos of individual advertising real estate firms.

In the fall of 1989, MLS took bids from publishers—including Moore—to produce its own real estate advertisement magazine. MLS eventually accepted the bid of defendant Big Sky Marketing, Inc.[1] and published its first magazine in January 1990. The MLS publication—known as "The Real Estate Magazine"—also included photographs and written descriptions of various properties under the advertising logos of real estate firms.

These advertising logos are the focus of Moore's suit. Moore claims that it has copyright protection in the logos, and that MLS infringed those copyrights by copying the logos. Specifically, Moore alleges that it had copyright protection in the logos appearing in its December 1989 magazine, and that the logos appearing in MLS' magazine in January 1990 constituted infringing copies.

There are twelve different logos at issue: (1) Alpine Realty; (2) Barker Realty; (3) Gem State Realty; (4) Irwin Realty; (5) Landwatch Realty; (6) Mountain View Realty; (7) Nelson Realty; (8) Three–M Realty; (9) Rainbow Realty; (10) Sabala Realty; (11) Robert Jones Realty; and (12) Canyonside Realty. While there are some questions about the origins of the Sabala and Rainbow logos, it is undisputed that the other ten logos were originally authored by others and provided to Moore by the particular advertising real estate firm. Moore asserts, however, that it has copyright protection in the ten preexisting logos because Wesley Gates—the publisher of Moore's magazine—altered the logos in a substantial and original manner.

To establish a case of copyright infringement, Moore must show: (1) that it owns a valid copyright, and (2) that MLS has unlawfully copied Moore's copyrighted material. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir.1986). The Court will turn first to the question whether Moore has valid copyrights on the ten logos that were originally created by entities other than Moore.

---

1. Default was entered against defendant Big Sky Marketing, Inc., on October 29, 1990.

Copyright protection exists in "original works of authorship." 17 U.S.C. § 102(a). The Ninth Circuit has held that "originality is the sine qua non of copyrightability." *Kamar International, Inc. v. Russ Berrie & Co.,* 657 F.2d 1059 (9th Cir.1981). The leading treatise on copyright law states that originality means "that the work owes its origin to the author, *i.e.,* as independently created and not copied from other works." 1 NIMMER ON COPYRIGHT § 2.01[A] at p. 2–9 (1990).

■ The ten logos at issue were originally created by artists other than Wesley Gates, and Moore's claim to original authorship concerns alterations made by Gates to each logo. Under certain circumstances, such alterations may be copyrightable as a "derivative work," a term defined in 17 U.S.C. § 101:

> A "derivative work" is a work based upon one or more preexisting works, such as an ... art reproduction ... or any other form in which a work may be recast, transformed, or adapted.

The copyright in a derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. 17 U.S.C. § 103(b); *Russell v. Price,* 612 F.2d 1123 (9th Cir.1979); 1 NIMMER, *supra* at § 3.04. To qualify for a separate copyright as a derivative work, the additional matter injected into the prior work must constitute more than a minimal or trivial contribution. *United States v. Hamilton,* 583 F.2d 448 (9th Cir.1978); 1 NIMMER, *supra* at § 3.03. These standards can best be understood by examining two cases: (1) *L. Batlin & Son, Inc. v. Snyder,* 536 F.2d 486 (2nd Cir.1976); and (2) *Gracen v. Bradford Exchange,* 698 F.2d 300 (7th Cir.1983). The court does not chose these two cases randomly: the *Batlin* case comes from the Second Circuit which is a preeminent authority on copyright matters; the *Gracen* case is written by Judge Richard Posner whose opinions are generally clear and well-reasoned. The Court will turn first to a discussion of the *Batlin* case.

In *Batlin,* the copyright claimant manufactured a plastic Uncle Sam piggy-bank he copied from a metal bank that had long since been in the public domain. This bank was operated by placing a coin in Uncle Sam's extended hand, and then pulling a lever that caused Uncle Sam's hand to lower and the coin to fall into a carpetbag. The claimant used the traditional metal bank to make his plastic replica. In doing so, the claimant changed the features of the Uncle Sam figure in a "minute way"; reduced the bank's size from eleven inches to nine inches; substituted leaves for arrows in the talons of an embossed eagle; and, of course, changed the medium of the bank from metal to plastic. The claimant asserted that he had created a derivative work entitled to copyright protection, and that the plastic bank was substantially different in an original manner from the traditional metal bank. The Second Circuit held that although the quantum of originality required for copyright protection is "modest," "there must be at least some substantial variation, not merely a trivial variation such as might occur in the translation to a different medium." *Id.* at 491. The Circuit found no such substantial variation in that case. The Circuit found that the various changes to the features of the bank were basically insignificant. In addition, many of those changes were driven more by the difficulties of plastic casting than any originality on the part of the author. The Second Circuit therefore denied copyright protection to the claimant.

The second case found persuasive by the Court—*Gracen*—explains the policy behind the requirement that a certain level of originality is required. Judge Posner writes that the originality requirement "is not to guide aesthetic judgments but to ensure a sufficiently gross difference between the underlying and the derivative work to avoid entangling subsequent artists depicting the underlying work in copyright problems." *Id.* at 303. In words more applicable to this case, if Moore's contribution was only slight, there is a great potential for future artists working from the original logos provided by the real estate firms to unknow-

ingly incorporate Moore's variations, leading to endless hair-splitting copyright litigation. This situation can be avoided, as Judge Posner recognized, by only affording copyright protection to those contributions that rise above the minimal or trivial: "A derivative work must be substantially different from the underlying work to be copyrightable." *Id.* at 305.[2]

In *Gracen,* the Circuit was faced with an issue whether a painter's drawing of Dorothy (as played by Judy Garland) from the movie "Wizard of Oz" was sufficiently different from a photograph of Dorothy taken during filming of the movie. The photograph shows Dorothy—in her well-known pigtails and checkered gingham dress—standing in a corn field with her right arm cradling a wicker basket and her left arm raised in a gesturing motion. *Id.* at 307, figure 2. The painting depicts Dorothy just as she appears in the photograph except that the artist has her carrying her dog, Toto, in her left hand. *Id.* at 306, figure 1. The painting's background is completely different, consisting of the yellow-brick road winding off into the distance towards a colorful rainbow. *Id.*

The Circuit had to determine whether the painting was sufficiently different from the photograph to merit copyright protection, and ultimately held that the differences were trivial and not subject to protection. The yellow-brick road background in the painting was considered at best a minimal contribution because it "is drawn from the movie set," and was therefore not a mark of original authorship. *Id.* at 305. Stripped of the background, and the placement of the dog Toto, the two Dorothys are remarkably similar and it was this similarity that obviously persuaded the Circuit to rule as it did.

Informed by these decisions, the Court will examine whether there are questions of fact concerning whether the logos prepared by Moore are sufficiently different from the logos given to Moore by the real estate firms to warrant copyright protection. The Court turns first to the Alpine Realty logo. The original logo consists of a red sun in the background, partially eclipsed by the "A" in Alpine, depicted as a mountain, with a pine tree to the side of, and partially covering, the mountainous "A". Wesley Gates redrew the tree outline to separate it from the mountain. The changes made by Gates are almost imperceptible and do not rise above the level of minimal contributions. Subsequent artists using Alpine's original logo could too easily stumble unintentionally into Wes Gates' contributions and become embroiled in copyright litigation.

The same analysis applies to the Canyonside, Irwin, Landwatch, Robert Jones, and Nelson logos. While small changes were made by Wesley Gates, his finished product was almost identical to the logos supplied by the real estate firms.

With regard to the Barker logo, Wesley Gates notes that he changed the logo from "John M. Barker Realty" to "Barker Realty" but neglects to mention that this was done at the request of the realty firm owner. *See* Affidavit of Jim Barker filed September 17, 1990, ¶¶ 4–5 at pp. 2–3. The Court can find no evidence of sufficient originality in this instance.

The Court turns next to the Gem State logo, an outline of the Idaho state boundaries with the words "Gem State Realty" in

---

**2.** Both *Batlin* and *Gracen* explicitly hold that the derivative work must be *substantially* different from the underlying work to be copyrightable. At oral argument, Moore's counsel took issue with this standard, but did not provide the Court with any authority that the Ninth Circuit has rejected these cases.

Nevertheless, there is some confusion. Both *Batlin* and *Gracen* initially recognize that the quantum of originality required for copyright protection is modest and that the contributions need only rise above the minimal or trivial to be protected. But both opinions then continue on to require that the contributions be "substantially" different from the preexisting work. It would appear that a contribution could be more than trivial, but still not substantially different from the preexisting work. Would such a contribution be entitled to protection?

The Court need not answer that question. As explained later in this opinion, the contributions made to the ten logos already in existence do not rise above the trivial. The Court therefore need not explore whether the contributions rise to the even higher level of "substantial."

dark ink inside the boundaries on a white background. Wesley Gates used the same logo design, but reversed the coloring: he darkened the area within the state boundaries and printed "Gem State Realty" in white on this dark background. Other than that, the logo is indistinguishable from the preexisting logo. What Wesley Gates did here is really no different than what the claimant did in *Batlin:* changing the medium of an item from metal to plastic is akin to reverse-coloring a logo. Neither change constitutes more than a trivial contribution for copyright purposes.

The Court turns next to the Mountain View logo. The only real changes made by Wesley Gates were to put "snow-caps" on the background mountain peaks, and simplify in a very small way the lettering of "Mountain View." Wesley Gates' finished product looks so similar to the logo provided by Mountain States that the Court can find no contributions that rise above the minimal or trivial in this logo.

Moore asserts that the color of a background, the particular size of letters, their spacing and arrangement can all combine to give the product authorship worthy of protection. To support its statement, Moore cites to *Reader's Digest v. Conservative Digest*, 821 F.2d 800 (D.C.Cir.1987). But this case did not deal with a derivative work; the issue was whether the original "Reader's Digest" magazine cover qualified for copyright protection. In fact, the Circuit stated that the individual elements of the cover—the typefaces and colors— were *not* entitled to protection. *Id.* at 806. It was only the original combination of those elements into a cover that was entitled to protection.

Had West Gates created the ten logos, the *Reader's Digest* case would be applicable. But at most he only changed certain elements of the logo in a minute way, and thus *Reader's Digest* is of no assistance.

■ The Court turns next to the Three–M logo. Here, Wesley Gates did produce a logo that was somewhat different than the logo provided by the Three–M Realty firm; different enough, perhaps, to enjoy copyright protection. By the same token, however, it is clear that MLS did not copy Wesley Gates' changes. Assuming that Wesley Gates made sufficient changes to the original logo to warrant copyright protection on a derivative work, Moore only has a copyright on the changes made by Wesley Gates, not on the original Three–M logo. It is uncontrovertible that MLS—in its January 1990 magazine—copied exactly the original logo provided by Three–M and did not incorporate any of the changes made by Wesley Gates. Thus, MLS' use of the Three–M logo was not an infringing use.

The Court therefore finds that with regard to the ten logos originally created by others, that plaintiff Moore, as a matter of law, did not make contributions to those logos that rose above the minimal or trivial.

The Court turns next to the remaining two logos: (1) Rainbow Realty; and (2) Sabala Realty. With regard to the Sabala Realty logo, Wesley Gates testifies in his affidavit that he created the original "Sabala & Roy" logo and then "altered" that logo when Sabala & Roy reduced its name to "Sabala." Affidavit of Gates filed August 29, 1990, at p. 4. In direct conflict with this testimony, Ray Sabala, the owner of Sabala Realty, testified that he created the original logo, and that a third party created the reduced logo when Sabala changed its name from Sabala & Roy to Sabala. But the Sabala logo created by the third party is not contained in the record. The Court has no way of judging the conflicting claims made in these affidavits. Because questions of fact exist, summary judgment must be denied on the Sabala Realty logo.

The Court examines next the Rainbow logo. A former broker for Rainbow Realty, Sylvia McBurney, testified that she had the original idea for the logo design consisting of a house at the end of a rainbow. She states that the logo was prepared by Wesley Gates at her request and subject to her approval.

■ Copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). The Supreme Court has

recently held that "the author is a party who actually creates the work, that is, the person who translates an idea into a fixed tangible expression entitled to copyright protection." *CCNV v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811, 822 (1989). Thus, Sylvia McBurney, who had the idea for the logo, would normally have no protection, while Wesley Gates, who "expressed" McBurney's idea, would enjoy protection. To this rule, however, there is an exception for "works made for hire." 17 U.S.C. § 201(b). The originator of an idea can maintain protection in the ultimate expression of that idea if the expression is prepared by an "employee" of the originator. The applicable definition of "work for hire" is contained in 17 U.S.C. § 101: "A work prepared by an employee within the scope of his or her employment."

■ The United States Supreme Court has held that the general common law of agency governs the determination whether an artist is an employee of another. *CCNV v. Reid, supra.* MLS' counsel conceded at oral argument that Wesley Gates was not an agent of Sylvia McBurney, and hence the work for hire doctrine is inapplicable.

Another exception to the general rule that Wesley Gates is entitled to copyright protection for his expression of McBurney's idea lies in 17 U.S.C. § 101. That exception—known as the joint author exception—provides that Gates and McBurney could be co-owners of the copyright if they intended "that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The present record is much too sparse to allow the Court to rule as a matter of law on the issue of joint authorship. The Court shall therefore deny the summary judgment motions on this issue without prejudice to the right of the parties to re-file the motions on a more complete record.

■ MLS also seeks summary judgment on Moore's claims under the Lanham Act, 15 U.S.C. § 1125. Moore claims that MLS has violated the Lanham Act by creating the misimpression that the art comes from the realty firms, not Moore. But with regard to all the logos except the Rainbow Realty and Sabala logos, the Court has determined as a matter of law that Moore has no trademark or copyright protection on the logos. This Lanham Act claim appears to be simply a backdoor method of reviving the copyright claims. As such, the Lanham Act claims must fall with the copyright claims. *See Litchfield v. Spielberg,* 736 F.2d 1352 (9th Cir.1984). The Court shall therefore dismiss the Lanham Act claims for the ten logos that the Court determined enjoyed no copyright protection. With regard to the two logos still at issue, the Court shall deny the motion for summary judgment seeking to dismiss the Lanham Act claims.

## ON SECOND MOTION FOR SUMMARY JUDGMENT

The Court has before it a second motion for summary judgment filed by defendant Twin Falls Multiple Listing Service (MLS). The motion was timely filed under the Court's scheduling order, and oral argument occurred on January 9, 1991. The Court must determine whether there exist any genuine issues of material fact. Fed. R.Civ.P. 56(c).

The Court will not repeat at length the facts of this case which were fully set forth in its November 30, 1990, memorandum decision, but will simply incorporate that decision herein by reference. In that earlier decision, the Court granted in part the motion for summary judgment filed by MLS, and dismissed plaintiff Moore's claims that it had copyright protection in ten different real estate firm logos. The Court denied defendant's request to dismiss two other logos—the Sabala and Rainbow logos—because there were conflicting affidavits concerning who was the original author of those two logos.

MLS has now brought a second motion for summary judgment seeking to dismiss Moore's claims that its copyright in the Sabala and Rainbow logos was infringed. For the purposes of this motion, MLS assumes that Moore originally authored both logos. MLS argues that Moore failed to affix a separate copyright notice on each

logo as it was published, and hence the logos are now in the public domain. Moore responds that it placed a copyright on the front of its real estate magazine which is sufficient to protect all advertisements within.

■ All parties agree that the magazines at issue here are collective works under 17 U.S.C. § 101.[1] The notice of copyright which must accompany a collective work is set forth in 17 U.S.C. § 404. That statute establishes a general rule that a single copyright notice applicable to the collective work as a whole is sufficient to protect the separate original contributions it contains. But from this general rule, the statute specifically exempts "advertisements inserted on behalf of persons other than the owner of copyright in the collective work." 17 U.S.C. § 404(a). The real estate firm logos are clearly "advertisements" and are just as clearly inserted on behalf of the real estate firms. The wording of § 404 would appear to require Moore to affix a separate copyright notice to each advertisement.

This was the same conclusion reached in *Canfield v. Ponchatoula Times,* 759 F.2d 493 (5th Cir.1985). In *Canfield* the Fifth Circuit held that "advertisements inserted in a collective work on behalf of persons other than the collective work copyright owner are not protected by a copyright notice applicable to the work as a whole." *Id.* at 495. The Fifth Circuit then examined whether the lack of proper copyright notice could be excused under 17 U.S.C. § 405. Under that statute, omission of a copyright notice is excused under certain conditions such as where the notice is omitted from only a small number of copies or copyright registration for the work was made within the last five years and attempts have been made by the owner to add notices to the "bare" publications.

The Circuit found that none of the § 405 exceptions applied and affirmed the district court's grant of summary judgment dismissing plaintiff's claims that the advertisements had been improperly copied. The present case is on all fours with *Canfield.* It is undisputed that Moore has never placed copyright notices on the separate advertisements. The copyright on the magazine as a whole is insufficient under the authority of § 404 and the *Canfield* case. In addition, Moore has never responded to MLS's arguments that the provisions of § 405 excusing inadequate notice are inapplicable. Under all these circumstances, the Court finds that the lack of copyright notices on the real estate firm advertisements withdraw whatever protection Moore enjoyed in those advertisements. This conclusion applies to all twelve real estate firm logos, and results in a dismissal of Moore's copyright claims concerning these advertisements.

■ Dismissal of the claims for copyright protection on the twelve logos leaves Moore with one claim: that MLS infringed Moore's copyright in the magazine as a whole. More specifically, Moore's complaint could be read to assert that Moore has a copyright in the selection and arrangement of the advertisements in the March 1987 and December 1989 issues of Moore's magazine, *Magic Valley Homes & Real Estate.* The Copyright Act does provide that Moore could have a copyright in the selection and arrangement of the real estate advertisements even if Moore had no copyright in the individual advertisements themselves. 1 NIMMER ON COPYRIGHT § 2.04[B] (1990). Moore has the burden of showing that its manner of selection and arranging of the advertisements constituted more than a minimal or trivial contribution. *Id.* at § 3.03, p. 3–10.

MLS does not challenge these points, but instead argues that there was no improper copying as a matter of law. MLS argues that Moore must establish a substantial similarity between the MLS magazine and Moore's magazine to prevail on its infringement claim. Such substantial similarity does not exist in this case according to MLS.

---

**1.** A collective work is defined in 17 U.S.C. § 101 as "a periodical issue, anthology or encyclopedia in which a number of contributions constituting separate and independent works in themselves, are assembled into a collective whole."

To establish a copyright infringement claim in the Ninth Circuit, Moore must prove that it owns a copyright, that MLS had access to the copyrighted work, and that there is substantial similarity not only of the general ideas of the magazines but of the expression of those ideas as well. *Sid & Marty Krofft Television Productions, Inc. v. McD's Corp.,* 562 F.2d 1157 (9th Cir.1977). Similarity of expression is required because copyright law protects only an author's expression of an idea or arrangement of facts, and not the ideas or facts themselves. *Landsberg v. Scrabble Crossword Game Player's, Inc.,* 736 F.2d 485 (9th Cir.1989). By placing ideas and facts beyond copyright protection, while allowing protection for the expression of those ideas or the arrangement of those facts, the Copyright Act prevents monopolization of facts or ideas while at the same time it protects originality.

The Ninth Circuit has recognized that one consequence of this policy in favor of the free use of ideas and facts is that the degree of substantial similarity required to show infringement "varies according to the type of work and the ideas expressed in it." *Landsberg v. Scrabble Crossword Game Player's Inc., supra,* at 488. For example, a fictional novel based around the idea of "boy meets girl" could take an infinite variety of forms. Thus, an allegedly infringing novel need not be a verbatim copy or close paraphrase of the original novel to be infringing. Because of the infinite potential variety, small resemblances will be more likely due to copying than chance. As the Ninth Circuit has recognized, "A resemblance in details of setting, incident, or characterization that fall short of close paraphrase may be enough to establish substantial similarity and infringement." *Id.* at 488.

On the other hand, a catalog which simply arranges facts is much different than the fictional novel just discussed. Under many circumstances, the arrangement of facts in a catalog can only take one or two forms. A subsequent catalog author could produce an almost identical catalog, not because he improperly copied the original, but simply because he used the only arrangement possible. This innocent conduct should not be punished. The Circuit has therefore adopted a rule that the fewer the methods of expressing an idea, the more the allegedly infringing work must resemble the copyrighted work in order to establish substantial similarity. *Cooling Systems and Flexibles v. Stuart Radiator,* 777 F.2d 485 (9th Cir.1985).

In *Cooling Systems,* the plaintiff claimed copyright protection for its radiator catalog that contained illustrations of radiators sold by the plaintiff. The Circuit found that the catalog contained "a great many unprotected facts and very little protectible expression of arrangement of those facts." *Id.* at 491. While the circuit recognized that an original *arrangement* of those facts is copyrightable, it placed on the plaintiff's shoulders the burden of proving "that what has been taken from his expression is something more than what must unavoidable be produced by anyone who wishes to use and restate the facts that form the greater part of the work." *Id.* at 492.

The plaintiff in *Cooling Systems* could not meet this burden. Unrebutted testimony established that there was only one way to arrange a radiator catalog, and that other arrangements had proven to be commercial flops. *Id.* at 492. With this testimony in hand, the Circuit affirmed the district court's directed verdict for defendants.

MLS argues that Moore's real estate magazine is just like the radiator catalog in *Cooling Systems:* there is only one way to select and arrange advertisements in a real estate magazine and hence Moore is not entitled to any copyright protection. In support of this argument MLS has attached four different real estate magazines to its reply brief filed January 7, 1991. MLS argues that these four magazines are representative of real estate magazines generally; are identical to Moore's publication; establish that there is only one way of selecting and arranging the advertisements; and therefore compel this Court to

follow *Cooling Systems* and dismiss Moore's suit.

This analysis, however, forgets that the Circuit in *Cooling Systems* had before it testimony establishing the limited options available to radiator catalog publishers. Witnesses had testified—with no rebuttal—that there was only one way to arrange the catalog, and that other methods had been tried but were unsuccessful in the marketplace. The district court in *Cooling Systems* had entered a directed verdict on the basis of this testimony, not a summary judgment. In fact, when the district court had earlier issued a summary judgment, the Ninth Circuit reversed and remanded the case for trial. *See Cooling Systems and Flexibles v. Stuart Radiator,* 711 F.2d 1062 (9th Cir.1983) *(mem.).*

The record here consists simply of the four other magazines attached to a reply brief, not an affidavit. MLS filed no affidavits on such important facts as how many magazines exist or what format they generally follow. Summary judgment is therefore inappropriate. Resolution of these issues must await trial.

█ At trial, it will be Moore's burden to show that their manner of selection and arrangement of the advertisements involved more than a minimal or trivial amount of originality. In addition, Moore bears the *Cooling Systems* burden of showing "that what has been taken" from Moore's magazine by MLS "is something more than what must unavoidably be produced by anyone who wishes to use and restate" the real estate firm advertisements. *Id.* at 492.

Finally, the Court notes that *Cooling Systems* also held that evidence of common errors (identical errors found both in the original work and the allegedly infringing work) is not conclusive evidence of substantial similarity: "Proof of common errors does not obviate the need for proving substantial similarity." *Id.* at 492.

In conclusion, the Court shall therefore grant in part and deny in part the second motion for summary judgment filed by defendant MLS. The Court shall grant the motion dismissing Moore's assertion that it has copyright protection in the Sabala and Rainbow real estate firm logos. The Court shall deny the motion for summary judgment on Moore's claim that it owns a copyright in the selection and arrangement of the advertisements as a collective work under 17 U.S.C. § 101.